OPINION OF THE COURT
Cassandra M. Mullen, J.
Procedural Background
On April 4, 2007 a final judgment and order of commitment was issued by the Honorable James D. Pagones, J.S.C., requiring respondent’s hospitalization in a psychiatric center because of his mental illness. Once in the care, custody and control of the Office of Mental Health at St. Lawrence Psychiatric Center, he was classified as a detained sex offender pursuant to section 10.03 (g) (5) of the Mental Hygiene Law. The conviction that brought Mr. Phillip within the parameters of article 10 was a 1995 rape in the first degree.
On August 10, 2007 the Honorable David Demarest in St. Lawrence County found probable cause that Joseph Phillip required civil management. In November 2007, a jury trial was presided over by this court wherein a verdict was rendered that he suffers from mental abnormality.
In December 2007, this court held a dispositional proceeding to determine whether Mr. Phillip is a dangerous sex offender, thereby requiring confinement, or instead, whether he could be placed in the community under intense supervision.
Findings
This court credits the testimony of Dr. Dell Warnick, Ph.D., Ms. Cynthia Asmus, and Dr. Wells, all witnesses called by the Office of the Attorney General. Though Dr. Warnick did not examine Mr. Phillip, his medical opinions were based upon an extensive review of respondent’s hospital records and a summary report detailing Mr. Phillip’s contacts with the criminal justice system.
According to Dr. Warnick, Joseph Phillip presently suffers from four distinct disorders defined by the Diagnostic and Statistical Manual of Mental Disorders (hereinafter DSM): schizophrenia, “polysubstance dependence disorder,” antisocial personality disorder and paraphilia not otherwise specified (NOS). The DSM is widely recognized and used in the medical community to diagnose mental disorders.
The DSM defines schizophrenia as a psychotic disorder with symptoms that include delusions, hallucinations, lack of impulse *843 control and a loss of touch with reality. Dr. Wells testified that Mr. Phillip currently takes antipsychotic medication to control these symptoms. The taking of his medication is monitored by hospital staff, and, before his hospitalization, was monitored by prison officials. However, there is no evidence to support the idea that he would take his medication properly if he was released into the community. In fact, the record demonstrates the opposite. By his own admission and while on parole supervision for a sex offense, Mr. Phillip stopped taking his medication, used illicit drugs and committed a violent sexual assault. In addition, medical records indicate that he has taken more than the prescribed amount of his medication in an effort to 6 6 get high.”
Moreover, since Mr. Phillip suffers from active symptoms of schizophrenia including delusions, Dr. Warnick opined that it is possible for him to believe that a nonconsenting person is consenting to a sexual encounter. Further, he may express irrational behavior in a sexually violent way. While compliance with his medication during his incarceration and institutionalization indicates that his symptoms are well controlled, his noncompliance while in the community and subsequent commission of a violent sexual assault demonstrate that he poses a grave risk to the community.
Mr. Phillip’s continual use of illicit drugs and alcohol show that he suffers from polysubstance dependence disorder. The DSM criteria for this disorder requires the use of at least three substances with no single substance used predominantly. In the present case the medical records indicate that Mr. Phillip was alcohol dependent by 13 years old and used cocaine, LSD, heroine and marijuana on a regular basis.
The diagnosis of antisocial personality disorder depends on the presence of the following finding: a pervasive pattern of disregard for the violation of the rights of others occurring since the age of 15. The DSM requires the presence of three or more of the following factors in making the finding: failure to conform to social norms by repeatedly performing acts that are grounds for arrest, deceitfulness, impulsivity, irritability and aggressiveness, reckless disregard for the safety of others, irresponsibility, and lack of remorse. In addition, the individual must be at least 18 years old, and must have displayed a conduct disorder before age of 15. Finally, the occurrence of the behavior must not happen exclusively during a schizophrenia episode.
Mr. Phillip’s criminal records support that he suffers from antisocial personality disorder. He has been arrested 35 times *844 resulting in 14 convictions. This pattern started before he was 15 years old. He has five convictions for sex offenses. During one offense, he sexually abused a woman in an elevator, and, during another, dragged a stranger off the street and raped her. Both incidents demonstrate impulsivity, aggressiveness, and a disregard for the rights of others. Finally, during his limited participation in sex offense therapy while incarcerated, his records indicated he placed some of the blame on his victims, showing his lack of remorse.
Respondent’s final diagnosis of paraphilia NOS is defined by the DSM as a mental illness causing a persistent strong sexual urge, impulse, or fantasy that lasts for at least six months. Additionally, this behavior must impair social functioning. Mr. Phillip has three misdemeanor sex offense convictions. Subsequent to those convictions, he followed a 16-year-old stranger into an elevator, threatened to kill her, grabbed her breasts, and exposed his penis resulting in his first felony sex offense conviction via his plea of guilty to attempted sexual abuse in the first degree. After serving 2 to 4 years in prison, he was paroled and 16 days later went off his medication, used crack cocaine and alcohol and dragged a female stranger off the street into an alleyway, displayed a knife and forcibly raped her, resulting in a conviction for rape in the first degree. The violence of these offenses and resulting prison terms has certainly impaired Mr. Phillip’s social functioning. In addition, the span of time between these offenses and his misdemeanor sex offenses is well over six months, encompassing a decade.
Two actuarial assessments used by the scientific community to measure the risk of sexual recidivism were utilized to determine whether Mr. Phillip is presently dangerous. The first, the “Static 99,” is designed to assist in the prediction of sexually violent recidivism. Mr. Phillip’s score was a seven. Individuals with this score are likely to sexually reoffend 43% of the time over 5 and 10 year time spans.
The second assessment is the Minnesota Sex Offender Risk Assessment Tool, or MnSoST-R. This tool is designed to assist in the prediction of sexual recidivism in adult males. Mr. Phillip scored a 10 translating into a recidivism rate of 57% over a six-year period.
Further indicating Mr. Phillip’s high potential for sexually violent behavior in the community are his failed attempts to participate in sex offender treatment programs. In 2004 while incarcerated, he completed a sex offender program. However, *845 during this program the records indicate he admitted to limited culpability and placed blame on his victims. Moreover, the counseling notes indicate that his mental health issues made it difficult for him to fully participate in the program. While in St. Lawrence Psychiatric Center (subsequent to the initiation of this article 10 proceeding) Mr. Phillip refused to participate in a sex offender treatment program on the advice of counsel. With no evidence of progress in sex offender therapy and given his current diagnosis and actuarial scores, the risk of reoffending remains significantly high.
Conclusion of Law
Based on the foregoing findings it is the judgment of this court by clear and convincing evidence that respondent is presently a danger to the community within the meaning of article 10 of the Mental Hygiene Law thereby requiring his continued confinement at this time.